𝕸𝖎𝖘𝖘𝖔𝖚𝖗𝖎 𝕮𝖔𝖚𝖗𝖙 𝖔𝖋 𝕬𝖕𝖕𝖊𝖆𝖑𝖘
𝕾𝖔𝖚𝖙𝖍𝖊𝖗𝖓 𝕯𝖎𝖘𝖙𝖗𝖎𝖈𝖙
𝕯𝖎𝖛𝖎𝖘𝖎𝖔𝖓 𝕿𝖜𝖔


| | | |
|---|---|---|
| IN THE INTEREST OF: | ) | |
| E.G.G. and E.E.G., minor children under | ) | |
| seventeen years of age. | ) | |
| | ) | |
| GREENE COUNTY JUVENILE OFFICE, | ) | |
| | ) | |
| Petitioner-Respondent, | ) | |
| | ) | |
| vs. | ) | Nos. SD33822, 33823 |
| | ) | (Consolidated) |
| | ) | |
| B.E.G., | ) | **Filed:  January 29, 2016** |
| | ) | |
| Respondent-Appellant. | ) | |

APPEAL FROM THE CIRCUIT COURT OF GREENE COUNTY

Honorable D. Andrew Hosmer, Associate Circuit Judge

**AFFIRMED**

B.E.G. ("Father") appeals the termination of his parental rights to E.G.G. and

E.E.G., two minor children who were sexually abused by him.[1]  He is currently serving a

prison sentence that, pursuant to section 211.038 RSMo Cum.Supp. 2005, prohibits him

---

[1] Father pled guilty to felony child molestation, section 566.067 RSMo Cum.Supp. 2006, of one child.

from seeking the custody of the children after his release.[2] Father brings five points on appeal: (1) that it was against the weight of the evidence that there was a significant likelihood of future harm to the children; (2) that there was no substantial evidence to support a finding of a significant likelihood of future harm; (3) that it was not in the children's best interest to terminate Father's parental rights; (4) that the trial court erroneously applied the law because termination conflicted with orders in effect at the time of the termination hearing that the permanency plan was guardianship; and (5) that a guardianship for the current caretaker was a less severe alternative to termination of Father's parental rights, and, thus, termination was a violation of Father's constitutional rights. We find no merit to any of Father's points and affirm the judgment.

A lengthy discussion of the facts does not assist in the merits of any of these points. The basic facts that are relevant are these: Father pled guilty to felony child molestation where the victim was less than twelve years of age, in violation of section 566.067. Father is prohibited, under section 211.038, from reuniting with the children because of his conviction. No services have been provided to Father to facilitate any reunification.[3] The children resided with their maternal grandmother; however, a juvenile referral was made due to the maternal grandmother not being financially able to support the children so they came into the care of the Children's Division. The children remained in the physical care of their maternal grandmother.

---

[2] Section 211.038.1 states, in part:

> 1. A child under the jurisdiction of the juvenile court shall not be reunited with a parent or placed in a home in which the parent or any person residing in the home has been found guilty of, or pled guilty to, any of the following offenses when a child was the victim:
> (1) A felony violation of section . . . 566.067, . . . [.]

[3] The court "relieved [the Children's Division] of making any reasonable efforts towards reunification with the father in May of '13" due to his charge and sentence.

**Points I and II**

The crux of Father's first two points is that there was insufficient evidence to support a finding of a significant likelihood of future harm to the children. In both points, Father focuses on the lack of evidence as to the future "concerns or dangerousness as to Father, especially in light of Father completing a parenting class and asking about the [c]hildren even when he was prohibited from having contact with them." Father says there is no explicit evidence in the record indicating that Father's past acts provide an indication he is likely to cause future actual abuse to the children. Instead, Father relies on the lack of evidence regarding the likelihood of his recidivism and future abuse of the children. He misconstrues the burden on the State to provide evidence of future harm to the children.

The court did not have to find that Father would probably sexually abuse his children in the future. The court was free to consider other harm, including emotional harm, to the children. The future harm is harm to the children that would likely be caused to them if Father's parental rights were not terminated. There was ample evidence before the trial court which indicated a significant likelihood of future harm to the children by maintaining the parent-child relationships.

There is no need to detail the extent of the damage that had been inflicted, but both children exhibited acting-out behaviors and sleep issues and entered therapy. The children's therapist indicated the significant trauma both children had suffered due to Father's sexual abuse and the future trauma and the disruption for the children in having any contact with Father. Just using Father's name embarrassed one of the children so much so that she requested that her last name be changed. Furthermore, Father has been

3

prohibited from having any direct contact with the children due to his conviction under section 566.067, pursuant to section 211.038; therefore, Father will not be a candidate to care for the children in the foreseeable future even if he is released. Even though he could not be a custodial parent due to his conviction, there was testimony that the children would be relieved and progress better in their lives if they knew that Father was permanently out of the picture—that he could not even seek visitation in the future. The trial court did not err in finding that there was a significant likelihood of future harm to the children. Points I and II are denied.

**Point III**

In his third point, Father contends that it is not in the children's best interest that his parental rights be terminated. In addition to the argument that there was no evidence of a likelihood of future harm that we have addressed in Points I and II, Father argues that termination of parental rights will deny the children rights of inheritance from Father's family. We commence with our standard of review. After determining that one or more statutory grounds had been proven, the trial court considered whether the termination was also in the best interest of the children. *In re P.L.O.*, 131 S.W.3d 782, 789 (Mo. banc 2004). We review that decision for an abuse of discretion. *Id.* The trial court's "discretion is abused when a court's ruling is clearly against the logic of the circumstances then before the court and so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration." *In re A.S.*, 38 S.W.3d 478, 486 (Mo.App. S.D. 2001).

The trial court found the best interest of the children according to the following evidence. There were no healthy ties to Father. The children's therapist reported that

4

one child was afraid of contact with Father and wanted her last name changed. Father, through his conduct in having been convicted of sexually molesting one of the children and the subsequent statutory prohibition of ever having custody of the children, put himself in a position of not being able to meet the basic needs of the children. There was evidence to support each of these findings.

The children's therapist stated in a letter that, based on her expertise and work with children, she feels it is in the children's best interest to terminate Father's parental rights. In her letter, the counselor discussed fear of future victimization and lack of trust as some of the reasons for her opinion. The counselor testified that the children *may* be ready for contact with Father in four or five years, but it is difficult to make a prediction for that far in the future. In her opinion, the main issue for children is that they are in a home where they are safe and protected. She further testified that at least one child would feel a sense of relief in knowing that Father's rights were terminated, and that the anxiety brought on by the unpredictability of the child's situation has been detrimental to her progress in therapy. Due to his conviction of child molestation, Father cannot be deemed a suitable reunification source for the children; however, if his parental rights remain intact, he may be able to petition the court for visitation and other rights at some point in the future. By leaving the door open to the possibility that Father has the right to file a motion to reenter their lives, the children's lives are disrupted and their progress stunted.

Father counters that a paternal great-grandmother is to leave a sum of money to his family and termination of Father's parental rights would sever the children's rights to inheritance. Father argues that it is in the best interest of the children, for purposes of an

5

inheritance, that his parental rights remain intact. Father, however, has offered no evidence to show that he, his parent, or the children are named as beneficiaries of this inheritance, nor that any monetary sum will be available upon his death for the children to inherit after the money has passed through three generations. Father, essentially, is asking the court to weigh speculative information regarding a possible future inheritance against therapeutic predictions of harm from future contact between Father and the children. The trial court did not err in considering the testimony concerning a possible future inheritance with all of the other evidence and in ultimately finding that it was in the best interest of the children to terminate Father's parental rights. Point III is denied.

**Point IV**

Next, Father contends that the trial court erroneously applied the law because termination conflicted with orders in effect at the time of the termination. Specifically, Father is arguing that the goal in effect at the time of the termination hearing was a guardianship. Father claims that we review this claim of error under our plain error standard of review. Under plain error review, we first determine whether there facially appears substantial grounds for believing that the trial court committed error that is evident, obvious and clear. *J.D. v. L.D.*, 2015 WL 8801173, *3 (Mo.App. E.D. December 15, 2015). We find no error. We find no cases, nor does Father provide any cases, that hold that the trial court cannot change the permanency plan for a child or that the goal of an eventual guardianship (for the grandmother, in this case, not the Father) conflicts with terminating Father's parental rights. There is simply no inconsistent or conflicting judgment in this case. Grandmother may still seek a guardianship for these

children after Father's parental rights are terminated.  We decline plain error review.

Point IV is denied.

## Point V

In his last point, Father claims that there were less drastic alternatives to the termination of his parental rights and, thus, his due process rights under the Fourteenth Amendment to the United States Constitution and Article 1 of the Missouri Constitution were violated.  The less drastic alternative, as posited by Father, is that grandmother could pursue the guardianship through probate court.  As we noted in Point IV, grandmother can still pursue the guardianship.  A guardianship to grandmother does not violate Father's constitutional rights.  Father's due process claim is not implicated in any possible future guardianship.[4]  As Father does not maintain any other basis for a claim that he was not given due process in violation of his constitutional rights, we deny Point V.

The judgment is affirmed.


Nancy Steffen Rahmeyer, J. - Opinion Author

Gary W. Lynch, J. - Concurs

William W. Francis, Jr., J. - Concurs

---

[4] Father provides no cases, nor have we found any, to support his contention that it is a constitutional violation to not consider a less restrictive alternative prior to the termination of his rights.  To the extent that Father is arguing that, the claim is abandoned.   "'An appellant has an obligation to cite appropriate and available precedent'" or, if none is available, "'should explain the reason for the absence of citations.'" *In re Marriage of Chorum*, 469 S.W.3d 484, 489 (Mo.App. S.D. 2015) (quoting *Selberg v. Selberg*, 201 S.W.3d 513, 516 (Mo.App. W.D. 2006)).